UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERRIZINO WILLIAMS,
        Plaintiff,

    v.

HOME DEPOT U.S.A, INC., a Delaware
corporation, d/b/a THE HOME DEPOT,
        Defendant.

Civil No. 04-1377-ST

O R D E R

HAGGERTY, Chief Judge:

    Magistrate Judge Stewart issued a Findings and Recommendation [50] in this action granting defendant Home Depot's Motion for Summary Judgment [16] in part as to the Complaint's First, Second, and Third Claims, to the extent that those claims are based on a hostile work environment theory, and also as to plaintiff's Fifth Claim for wrongful termination. The Findings and Recommendation identified the remaining claims for trial as: (1) the First, Second, and Third Claims based on racial discrimination and retaliation; and (2) the Fourth Claim for injured worker discrimination.

    Objections to the Findings and Recommendation were filed by both defendant [51] and plaintiff [53]. The matter was then referred to this court for review.

1 -- ORDER

When a party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

The parties filed objections in a timely manner. The court has given the file of this case a *de novo* review, and has also carefully evaluated the Magistrate's Findings and Recommendations, the parties' objections, and the Record of the case. The objections are sustained in part and denied in part, and the Findings and Recommendation is adopted in part.

The Magistrate Judge reviewed this case thoroughly in her Findings and Recommendation. The applicable standards, relevant facts and legal reasoning need be recited here only briefly. The background facts are largely undisputed; specific record citations regarding the facts that are reviewed below have been provided in the Findings and Recommendation.

Plaintiff alleges three claims for race discrimination under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Title VII), and O.R.S. Chapter 659A. Plaintiff also alleges claims for injured worker discrimination (O.R.S. Chapter 659A.040-.052) and wrongful discharge against his former employer, Home Depot USA, Inc., doing business as The Home Depot (Home Depot or defendant).

Defendant seeks summary judgment as to each of these claims, and the Findings and Recommendation summarized correctly the standards applicable to resolving this motion. Findings and Recommendation at 2-3. In particular, the court is required to view the inferences drawn from the facts "in the light most favorable to the nonmoving party," and reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id*. at 2, citing *T.W. Elec. Serv., Inc. v. Pac.*

2 -- ORDER

*Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). This court's review of the background provided by the Findings and Recommendation is made in accordance with this requirement.

Moreover, the Findings and Recommendation recognized correctly that "very little evidence" is required for an employee to survive summary judgment in a discrimination case, "because the ultimate question is one that can only be resolved through a searching inquiry one that is most appropriately conducted by the factfinder, upon a full record." Findings and Recommendation at 3, quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (internal quotations and citations omitted).

BACKGROUND

Plaintiff is African-American. He started working full-time at the "Airport Way Home Depot" store near Portland, Oregon, on April 29, 2002, on the night shift freight crew. For purposes of this litigation, this court will use the terminology applicable to defendant's current ranking system in its Performance and Development Summaries, which uses these labels (from highest to lowest): "Outstanding," "Achiever," "Performer," and "Improvement Required." These rankings were utilized at plaintiff's most recent evaluation by Home Depot. After plaintiff's initial performance evaluation on July 11, 2002, his ranking was equivalent to Achiever.

Plaintiff was later advised in January 2003 that he would need to take more responsibility for his department and work at a level above what he was doing in order to maintain his Achiever ranking. Plaintiff alleges that he followed these instructions until he suffered an on-the-job injury. The injury occurred on January 13, 2003, during the first week after James Strong was promoted into an assistant store manager position supervising plaintiff.

Plaintiff missed several weeks due to the injury, but returned to work in February or March 2003. Because of his injury, he was restricted to "light duty," which mandated no repetitive lifting, twisting, or straining, and no lifting over twenty pounds. Despite these restrictions, Strong often asked plaintiff to

perform duties beyond his restrictions. Plaintiff refused these requests. In response to plaintiff's refusals, Strong would repeatedly express his frustration by referring to "you people" and making statements similar to "You people, every time I ask you to do something, you people always claim or use something about being hurt for an excuse not to do something or a reason not to." Findings and Recommendation at 7, other citations omitted. At other times Strong would express frustration by throwing his hands up and saying "Y'all people," before walking away. *Id.* Plaintiff asserts that Strong indicated his frustration about plaintiff and his injury in his demeanor, facial expressions, complexion, tone of voice, and by disrespecting plaintiff.

Plaintiff requested repeatedly that Strong refer to him and his co-workers by using individual names, not the phrase "You people." He also asked Strong to treat employees equally. Strong responded by telling plaintiff to "shut up," and by refusing to answer plaintiff's inquiries about what Strong meant by the phrase "You people." Plaintiff's immediate supervisor, night crew freight supervisor Ray Clark, also confirmed that Strong used the phrase "you people" repeatedly when referring to the night crew, which consisted of several minorities. Clark also construed Strong's use of the phrase as demeaning.

Plaintiff also complained about Strong "spying" on plaintiff. Clark observed Strong spying on plaintiff and other employees, most often other minority employees. Relatedly, plaintiff testified that Strong gave preferential treatment to non-African-American co-workers and assisted non-African-Americans with their job performances.

In April 2003, plaintiff underwent another performance review. At this review plaintiff was reduced in Home Depot's categories from an Achiever to a Performer.

Clark disagreed with plaintiff's ranking. The evaluation he submitted to Strong on behalf of plaintiff reflected a different ranking. Clark believes that his evaluation of plaintiff was altered or

"forged" before plaintiff met with Strong and Clark. Clark had never had one of his rankings changed prior to plaintiff's April 2003 evaluation.

Plaintiff complained that his evaluation was inaccurate and unfair, and he refused to sign it. Clark later advised plaintiff to discuss the evaluation with store manager Dale Pulver. After plaintiff did so, Pulver told plaintiff that he would look into the matter. Pulver contacted Human Resources Manager John Weinbrecht, and Weinbrecht in turn asked Dan Guzman, Strong's predecessor, about plaintiff's rating. When Guzman agreed with plaintiff's "Performer" rating, Pulzer made no further inquiries. Specifically, Clark was not asked for any input as to plaintiff's performance.

In May 2003, plaintiff learned that his mother was ill and needed his help. Plaintiff had mentioned the possibility of needing to visit his mother previously to both Clark and Strong, and neither expressed objections. Plaintiff contacted Clark on May 21, 2003, and advised Clark that he needed to leave immediately to see his mother and that he would return within a couple of weeks. Clark agreed to inform Strong of plaintiff's plans, and at a Home Depot meeting that day, announced that plaintiff had gone to Mississippi. Strong was in attendance at the meeting and responded "Okay."

Plaintiff returned to Portland on May 27, 2003, and reported to work on May 28, 2003. Sometime prior to May 28, Strong had reported plaintiff as a "no-show" to Human Resources Manager Weinbrecht. Strong denied having any knowledge as to why plaintiff was absent, and that none of his managers, including Clark, knew where plaintiff was.

Upon learning of his termination, plaintiff asked Strong whether Clark had notified Strong of plaintiff's situation. Strong replied that notifying Clark was insufficient and ordered plaintiff to leave the store. Plaintiff advised Clark of his termination, and Clark explained in Strong's presence that plaintiff had not abandoned his job. Strong responded that he did not "give a damn," and that "what is done is done." Findings and Recommendation at 13, other citations omitted.

5 -- ORDER

QUESTIONS PRESENTED

Plaintiff's first claim alleges race discrimination under 42 U.S.C. § 1981. Plaintiff's second claim alleges discrimination under Title VII. Plaintiff's third claim alleges discrimination under applicable state statutes. At oral argument before the Magistrate Judge regarding defendant's motion for summary judgment, plaintiff was permitted to clarify that he asserts three theories in support of each of his first three claims: racially-based discriminatory treatment; racially hostile work environment; and retaliation for objecting to racially-based discrimination.

Plaintiff's fourth claim alleges violation of state statutory law prohibiting discrimination against injured workers. Plaintiff's fifth claim alleges wrongful termination under state law.

As to plaintiff's first three claims, the Findings and Recommendation concluded that issues of material fact exist as to whether plaintiff was subjected to illegal racially-based discriminatory treatment and/or retaliation for objecting to discrimination. However, the Findings and Recommendation concluded that plaintiff's assertions that he was subjected to a racially hostile work environment should be dismissed as a matter of law.

The Findings and Recommendation concluded that plaintiff's fourth claim alleging violation of state statutory law prohibiting discrimination against injured workers should survive defendant's summary judgment motion. The Findings and Recommendation concluded that defendant was entitled to summary judgment as to plaintiff's fifth claim, alleging wrongful termination under state law, because plaintiff's remedies under federal law preclude a wrongful termination claim based on race discrimination brought under state law.

Plaintiff objects to the Findings and Recommendation's conclusions that his assertions that he was subjected to a racially hostile work environment should be dismissed as a matter of law, and to the conclusion that defendant was entitled to summary judgment as to plaintiff's fifth claim alleging wrongful

discharge under state law. Defendant objects to the Findings and Recommendation's conclusions that there are any issues of fact precluding dismissal of plaintiff's racial discrimination, retaliation, or injured worker discrimination claims.

Plaintiff's objections to these findings are addressed first.

ANALYSIS

    1.    Plaintiff's Objections

Plaintiff argues that he has presented sufficient evidence to withstand summary judgment as against the aspects of his claims that assert a racially hostile work environment. This court agrees.

To assert a viable hostile work environment claim, an employee must show (1) that he or she was subjected to verbal or physical conduct based upon race or national origin; (2) that the conduct was unwelcome; and (3) that the conduct was "sufficiently severe or pervasive to alter the conditions of [his or her] employment and create an abusive work environment." *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005), quoting *Vasquez v. Co. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

Determining whether the complained-of conduct was sufficiently severe or pervasive to alter employment conditions and create an abusive work environment requires an employee to show both subjective and objective hostility in the workplace. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004). An evaluation of a workplace's objective hostility is made "from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." *Id*. at 1115. Objective hostility is measured by examining the totality of circumstances, "including the frequency, severity, and nature (*i.e.*, physically threatening or humiliating as opposed to merely verbally offensive) of the conduct." *Galdamez*, 415 F.3d at 1023, citing *Vasquez*, 349 F.3d at 642.

Less severe racially hostile conduct may nevertheless support this kind of claim if there is sufficient evidence of the frequency and pervasiveness of the conduct; *i.e.*, the required level of severity or

7 -- ORDER

seriousness varies inversely with the pervasiveness or frequency of the conduct. *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1073 (9th Cir. 2005) (citation and internal quotation marks omitted). In *El-Hakem*, conduct that was not "especially severe" (a supervisor intentionally refused to use an employee's correct Arab name despite the employee's objections) nevertheless supported a hostile work environment claim because such conduct was frequent and consistent. *Id.*

Conversely, evidence of "two regrettable incidents" involving mockery of an Asian employee, "coupled with . . . other offhand remarks made by [the plaintiff's] co-workers and supervisor, did not alter the conditions of [the plaintiff's] employment" because the incidents occurred over a span of two-and-a-half years. *Manatt v. Bank of Am., NA*, 339 F.3d 792, 799 (9th Cir. 2003). However, the Ninth Circuit noted that "[i]f these actions had occurred repeatedly, [the plaintiff] may very well have had an actionable hostile environment claim." *Id.*, citing *Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000).

Viewed in a light favorable to plaintiff, the evidence in the record of this case suggests that plaintiff was subjected to repeated, consistent actions that easily exceed the two incidents and the offhand remarks found insufficient in *Manatt*. This evidence includes the following:

- Strong's repeated use – over plaintiff's objections – of the phrase "You people" when expressing frustration toward plaintiff's injury-related light duty restrictions or addressing the night crew that consisted of several minorities;

- Strong's psychological bullying of plaintiff and insistence that plaintiff "shut up" when plaintiff inquired about Strong's treatment;

- Strong's continued spying upon plaintiff over plaintiff's objections, and other demonstrations of disrespect in Strong conduct toward plaintiff and other minorities;

- Plaintiff's perceptions that Strong favored and assisted non-minority crew members, and

8 -- ORDER

- Strong's repeated requests that plaintiff violate his light duty work restrictions, which were both physically dangerous and demeaning to plaintiff.

In addition to these patterns of racially hostile conduct, there is evidence that Strong ignored or altered positive input from Clark regarding plaintiff's evaluation, and there is evidence suggesting that the subsequent "investigation" by defendant of plaintiff's evaluation was limited and superficial. When these facts are considered in connection with the corroborated evidence that Strong lied in order to have plaintiff terminated, this court is compelled to conclude that rational jurors could find that Strong's intentional conduct against plaintiff created a hostile work environment.

This court concludes that issues of fact exist as to whether Strong's conduct was sufficiently pervasive to alter the conditions of plaintiff's employment and to create a work environment that would be construed as racially hostile to a reasonable African-American. Accordingly, plaintiff's objections are sustained as to the Findings and Recommendation's conclusion that plaintiff's claims regarding a hostile work environment should be dismissed as a matter of law.

Plaintiff's next objection is directed against the recommended dismissal of his wrongful discharge claim. The Findings and Recommendation noted correctly that under Oregon law, the common law remedy for wrongful discharge or termination is available only in the absence of an adequate statutory remedy. Findings and Recommendation at 26, citing *Delaney v. Taco Time Int'l, Inc.*, 681 P.2d 114, 118 (Or. 1984); *Anderson v. Evergreen Int'l Airlines, Inc.*, 886 P.2d 1068, 1072 (Or. App. 1994).

Oregon courts have been in significant conflict on whether adequate statutory remedies preempt a wrongful discharge claim. *See Draper v. Astoria Sch. Dist. No. 1C*, 995 F. Supp. 1122 (D. Or.1998), *overruled in part by Rabkin v. Or. Health Sciences Univ.*, 350 F.3d 967 (9th Cir. 2003) the decision in *Draper* noted "conflicting statements" issued by Oregon courts regarding availability of the wrongful discharge tort and the resulting "considerable confusion." *Id*. at 1126-32. Scrutiny regarding the

9 -- ORDER

availability of the tort of wrongful termination or wrongful discharge in Oregon is ongoing, and has been undertaken quite recently:

> Under Oregon law, the availability of a common law remedy is conditioned upon the absence of an adequate statutory remedy. *Price v. Multnomah Co.*, 132 F. Supp.2d 1290, 1295 n. 6 (D. Or. 2001) (citing *Delaney*, 681 P.2d 114 (Or. 1984)). The purpose of the wrongful discharge tort "is not to vindicate the individual interests of the employee by assuring that he or she receives the maximum possible recovery, but rather to protect important public policies by punishing conduct that thwarts those interests." *Draper*, 995 F. Supp. at 1130. Thus, a wrongful discharge claim is unavailable if a statutory remedy adequately protects the public interest in question. *Id*. at 1130-31.

*Huff v. City of Portland*, 2006 WL 572152, *2 (D. Or. 2006).

The court in *Huff* reiterated that under the *Draper* test, "a defendant seeking to dismiss a common law claim because the plaintiff has an adequate statutory remedy must show two things: (1) the statutory remedy is adequate in comparison to the common law remedy, and (2) the legislature intended that the statute abrogate the common law." *Id*., citations omitted; *see also Olsen v. Deschutes Co.*, 127 P.3d 655, 660 (Or. App. 2006) (to support dismissing the wrongful discharge claim, defendant must demonstrate both that the statutory remedies for retaliatory discrimination is adequate in comparison to the remedy available under a common-law tort action, and also that the legislature intended the statute to abrogate the common law).

Here, plaintiff's wrongful discharge claim alleges that a substantial factor in defendant's decision to terminate plaintiff was plaintiff's opposition to racial discrimination to which defendant subjected plaintiff. The applicable statute, O.R.S. 659A.030(1)(f), makes it an unlawful employment practice "[f]or an employer to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful employment practice. . . ."

Plaintiff has potential statutory remedies for the retaliatory conduct alleged in his wrongful discharge claim. These remedies for retaliatory conduct are derivable from: (1) a claim under O.R.S.

10 -- ORDER

659A.030(1)(f) for unlawful retaliation, as plaintiff asserts in his Third Claim; or (2) a claim for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), as plaintiff asserts in his Second Claim. The Ninth Circuit's decision in *Manatt* also establishes that even plaintiff's First Claim brought under 42 U.S.C. § 1981 may incorporate allegations of retaliatory conduct. *See Manatt*, 339 F.3d at 800 (where a plaintiff charges an employer with racial discrimination in taking retaliatory action, a cause of action under § 1981 has been stated).

Remedies available under Title VII are construed as supplemental and are not intended to supersede any other common law claim. *See* 42 U.S.C. § 2000e-7. In partial congruence with this, this court has recognized previously that federal claims brought under Title VII and state claims brought under Oregon statutes do not preempt a wrongful discharge claim premised on the allegation that plaintiff was discharged in retaliation for opposing discrimination based on gender. *See Shepherd v. City of Salem*, 320 F. Supp. 2d 1049, 1059-60 (D. Or. 2004) citing *Holien v. Sears, Roebuck and Co.*, 689 P.2d 1292, 1303-04 (Or. 1984); *cf. Walsh v. Consolidated Freightways*, 563 P.2d 1205 (Or. 1977) (claim for discharge in retaliation for report of *workplace safety violation* is, however, preempted). There is no rational reason to distinguish a discharge occurring allegedly in retaliation for opposing discrimination based upon race from retaliation for opposing gender discrimination.

This court notes that the Ninth Circuit has also affirmed summary judgment entered against a wrongful discharge claim in a case in which the plaintiff alleged that she had been terminated in retaliation for resisting race discrimination against another employee. *See Thomas v. City of Beaverton*, 379 F.3d 802 (9th Cir. 2004). The Ninth Circuit explained that the plaintiff "did not suffer the kind of personal injury that would warrant providing a common law remedy of wrongful discharge in addition to the existing state and federal statutory remedies for retaliation." 379 F.3d at 813.

In a more recent, more analogous case, however, the Ninth Circuit affirmed judgment as a matter of law regarding a plaintiff's federal retaliation and state wrongful discharge claims, noting simply that "[a] plaintiff in a wrongful discharge action under Oregon common law must make a similar showing [as required in the federal retaliation claim]: that his employment was terminated because he resisted discrimination." *Cornwell v. Electra Cent. C.U.*, 439 F.3d 1018, 1031 (9th Cir. 2006), citing *Holien*, 689 P.2d at 1299-1300. The reasoning in *Cornwell* permits a strong inference that these claims remain viable when presented together.

This inference is in accord with several unpublished decisions in which Oregon federal courts have determined that remedies under Title VII are inadequate to compensate an employee who is discharged in retaliation for opposing discrimination. *See, e.g., Paugh v. King Henry's, Inc.*, 2005 WL 1565112, *9 (D. Or. June 30, 2005) (the statutory remedy for violating O.R.S. 659A.030 is inadequate to protect employees from a wrongful discharge caused by resisting employment discrimination); *Oelke v. Costco Wholesale Corp.*, 2005 WL 1173311, *2 (D. Or. April 26, 2005) (the remedy under Title VII is inadequate to compensate an employee who is discharged in retaliation for opposing discrimination due to the caps on compensatory and punitive damages); *Chestnut v. Fred Meyer Jewelry, Inc.*, 2004 WL 1900556, *15 (D. Or. August 24, 2004) ("This court, following Judge Stewart's opinions in *Hand v. Fred Meyer, Inc.*, 96-92-ST (April 8, 1996) and *Coleman v. Pig N Pancake, Inc.*, 94-405-ST (January 22, 1996) and Judge Jelderks's opinion in *Chandos v. Palmer, Groth & Pietka, Inc.*, 95-1473-JE (December 14, 1995), finds that plaintiff's common law wrongful discharge claim based on her resistance to unlawful sex-based discrimination is not barred").

Moreover, there is no indication from the Oregon courts that O.R.S. 659.030 was designed to preempt common law wrongful discharge claims based on race. The absence of controlling case law supporting a determination that claims brought under Title VII, 42 U.S.C. §1981, or Oregon statutory law

12 -- ORDER

should prevent a plaintiff from bringing a common law wrongful discharge claim compels the conclusion that the remedies available under Title VII, §1981, and Oregon statutory law are insufficient to exclude plaintiff's common law wrongful discharge claim.  Accordingly, plaintiff's objections as to the recommendation that plaintiff's wrongful discharge claim should be dismissed because there was adequate statutory protection are sustained.  Defendant's motion for summary judgment on the grounds that plaintiff's wrongful discharge claim is precluded by the existence of adequate statutory remedies is denied.

    2.       Defendant's Objections

Defendant first objects to the Findings and Recommendation's conclusion that plaintiff's rating at his job evaluation in April 2003 constituted an adverse action for purposes of establishing *prima facie* claims under Title VII and 42 U.S.C. § 1981.  This court has performed a *de novo* review of the Findings and Recommendation and the record, and concludes that the Findings and Recommendation determined correctly that the record of this action supports inferences that the April 2003 performance review by Strong was not completed in accordance with defendant's past practices, plaintiff's performance evaluation may have been altered or forged, and that plaintiff's April 2003 rating of Performer – undeniably a lower rating than plaintiff's previous rating of Achiever – was undeserved, and constituted a rating that a rational juror could interpret as (1) resulting from a retaliatory motive and (2) reasonably likely to deter the plaintiff or others from engaging in protected activity.  *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002).

Defendant's renewed contention that a reduction in rating from Achiever to Performer should not be construed as negative is an argument going to the weight and interpretation of evidence, and is unpersuasive in determining the questions of law presented by defendant's summary judgment motion. Defendant's objection as to the interpretation of plaintiff's April 2003 evaluation as a matter of law is overruled.

13  -- ORDER

Defendant's next objection is directed at the Findings and Recommendation's conclusions that (1) plaintiff presented a *prima facie* claim alleging unlawful discriminatory treatment, and (2) that there is at least a question of fact as to whether there is specific and substantial evidence suggesting that defendant's proffered reason for plaintiff's termination was pretextual.  This objection is also overruled.  As reviewed thoroughly above and in the Findings and Recommendation, plaintiff presents evidence of discriminatory conduct toward himself and other minorities, preferential treatment of non-minorities, and specific and substantial evidence that Strong lied about the circumstances surrounding plaintiff's absence from his employment and reported falsely that plaintiff had abandoned his job.  As the Findings and Recommendation observed correctly, "[w]hile Home Depot has garnered evidence to refute the evidence proffered by Williams to support each of these conclusions, at best Home Depot's evidence simply raises a factual dispute not amenable to resolution on summary judgment."  Findings and Recommendation at 18.

Defendant's next objection is directed against the Findings and Recommendation's conclusion that plaintiff's unlawful retaliation claims should survive defendant's summary judgment motion.  Defendant contends that there is no evidence that plaintiff's termination was connected to plaintiff's complaints about discrimination.  Defendant's arguments assail the weight of the evidence supporting plaintiff's claims, but fail to establish that those claims must be dismissed as a matter of law.  As reviewed above and in the Findings and Recommendation, there is evidence that Strong used racially-based phrases repeatedly when frustrated about plaintiff's work restrictions and refused to respect plaintiff's requests to discontinue using those phrases.  Instead, Strong allegedly was confrontational and rude to plaintiff.  Viewing this and other related evidence and its inferences in favor of plaintiff, it is plain that there is at least a question of fact as to whether plaintiff's termination was due to his opposition to Strong's treatment of defendant's minority employees.  Defendant's arguments that its proffered legitimate reasons for plaintiff's as a matter of law

14 -- ORDER

cannot be viewed as pretextual are virtually identical to defendant's position regarding plaintiff's discriminatory treatment claim, and are rejected for the reasons provided above.

Defendant's last objection concerns the Findings and Recommendation's conclusion that plaintiff's claim against defendant for discriminating against him because he was an injured worker and utilized the workers' compensation system should survive defendant's summary judgment motion. Findings and Recommendation at 26. The Findings and Recommendation determined that plaintiff produced evidence that Strong repeatedly asked Williams to perform duties beyond his work restrictions, gave Williams an undeservedly low performance evaluation in April 2003, and leveled disingenuous charges that plaintiff abandoned his job, and that the "content and timing" of the interactions between plaintiff and Strong raise an issue of fact as to whether Strong discriminated against plaintiff because plaintiff suffered an on-the-job injury which restricted plaintiff to light duty work. *Id*.

Defendant's objection challenges whether plaintiff's evidence fails to show that his injury claim motivated defendant to terminate him. This objection attacks the weight of plaintiff's evidence, but fails to establish as a matter of law that plaintiff's worker compensation claim should be dismissed.

3.  CONCLUSION

For the reasons provided above, plaintiff's objections [53] are SUSTAINED and defendant's objections [51] are OVERRULED. Accordingly, the Magistrate Judge's Findings and Recommendation [50] is ADOPTED IN PART as follows: defendant's Motion for Summary Judgment [16] is denied in its entirety.

IT IS SO ORDERED.

Dated this 13 day of April, 2006.

/s/Ancer L.Haggerty
Ancer L. Haggerty
United States District Judge